NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------ :
JOSE FRIAS,                                      :
                                                 :
                            Plaintiff,           :
                                                 :
v.                                               :    Civil Action No. 09-1360 (SRC) (MAS)
                                                 :
ALAN and JOHN COMPANY d/b/a                      :    OPINION
GLEN ROCK HAMS et al.,                           :
                                                 :
                            Defendants.          :
------------------------------------------------ :

**CHESLER**, **U.S.D.J.**

This matter comes before the Court on the motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, by the Defendants pled as Alan and John Company d/b/a Glen Rock Hams and Glen Rock Hams, Inc. ("Defendants.")  For the reasons stated below, the motion will be granted in part and denied in part.

BACKGROUND

This motion arises from an employment dispute removed from the Superior Court of New Jersey.  Plaintiff Jose Frias is a former employee of the Defendants pled as Alan and John Company d/b/a Glen Rock Hams and Glen Rock Hams, Inc.[1]  In brief, Plaintiff contends that he has been disabled and that Defendants discriminated against him and retaliated against him for engaging in protected activity.  The Complaint asserts seven claims: 1) disability discrimination, in violation of the New Jersey Law Against Discrimination ("NJLAD"); 2) retaliation, in

---

[1] Defendants contend that the correct employer entity is Al & John, Inc. t/a Glen Rock Hams.

violation of the NJLAD; 3) violation of the National Labor Relations Act, 29 U.S.C. §§ 151-169; 4) deprivation of healthcare benefits, in violation of ERISA; 5) breach of contract; 6) breach of implied contract; and 7) breach of the implied covenant of good faith and fair dealing. Defendants have moved for summary judgment on the Complaint.

## ANALYSIS

**I.      Relevant legal standard**

   A.      Motions for summary judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith

respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

**II.     Defendants' motion for summary judgment**

    A.     <u>Plaintiff's claim for disability discrimination</u>

Defendants move for summary judgment on Plaintiff's claim for disability discrimination under the NJLAD on the ground that Plaintiff cannot establish a prima facie case. Specifically, Defendants contend that Plaintiff cannot prove that he is disabled within the meaning of the statute.

The NJLAD defines disability as follows:

> "Disability" means physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness including epilepsy and other seizure disorders, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or any mental, psychological or developmental disability, including autism spectrum disorders, resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques.

N.J. Stat. Ann. § 10:5-5(q).

Defendants point to Plaintiff's own testimony that he is not disabled. Plaintiff, however, points to deposition testimony which, if believed by a finder of fact, could reasonably lead to a conclusion that Plaintiff has been disabled within the meaning of the statute. First, Plaintiff points to his testimony that his shoulder injury has interfered with his ability to maintain anal hygiene. (Frias Dep. 91:12-15.) This could meet the statutory requirement that a physical infirmity prevents the normal exercise of a bodily function. Second, Plaintiff also points to his testimony that severe pain limited his ability to stack pallets. (<u>Id.</u> at 63:6-10.) Again, a reasonable finder of fact could conclude from this testimony that an infirmity prevented the

normal exercise of a bodily function.

Defendants contend that, because Plaintiff lacks objective medical evidence of any disability, he cannot prove that he is disabled. In support, Defendants cite Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 597 (1988), but have mischaracterized that case. In Clowes, the New Jersey Supreme Court stated: "Given the complexity of the many diagnostic procedures involved, expert medical testimony is required to establish the fact of the employee's alcoholism." Id. Clowes does not establish a *per se* requirement that expert medical testimony is required to prove disability under the NJLAD. Nor have Defendants offered any evidence that any complex diagnostic procedures require such testimony here.

Defendants also argue in passing that Plaintiff cannot show that he was not accommodated. Defendants explain, however, that this is because Plaintiff cannot prove that he is disabled – an argument that has been addressed supra.

As to Count I, Plaintiff has defeated the motion for summary judgment by pointing to evidence which, if credited, would support a finding that he has been disabled.

B.  Plaintiff's ERISA § 510 claim

Defendants move for summary judgment on Count IV, which asserts violation of ERISA. Defendants contend that the claim is without merit. Because Plaintiff bears the burden of proof of Count IV at trial, the summary judgment burden shifts to Plaintiff.

In opposition, Plaintiff asserts that Defendants violated ERISA § 510 when they transferred Plaintiff from a union position to a non-union position in October of 2007. (Pl.'s Opp. Br. 26.) The Third Circuit has set forth the legal standard for such claims as follows:

The legal standard in § 510 cases is very clear. To recover, a plaintiff must

5

>demonstrate that the defendant had the "specific intent" to violate § 510. This requires the plaintiff to show that the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits. The plaintiff may use both direct and circumstantial evidence to establish specific intent, but when the plaintiff offers no direct evidence that a violation of § 510 has occurred, the court applies a shifting burdens analysis, similar to that applied in Title VII employment discrimination claims. In this burden-shifting analysis, the plaintiff must first establish a prima facie case by showing: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled. If the plaintiff is successful in demonstrating her prima facie case, the burden then shifts to the defendant-employer . . .

DiFederico v. Rolm Co., 201 F.3d 200, 204-205 (3d Cir. 2000) (citations omitted).

Plaintiff has failed to point to evidence which supports the inference that the employer effectuated the October 2007 job transfer with the specific intent of interfering with Plaintiff's rights under ERISA. There is certainly no direct evidence that the employer made a conscious decision to interfere with Plaintiff's health benefits. Plaintiff may therefore use circumstantial evidence to make out a prima facie case. Plaintiff has not succeeded in doing so. At most, the deposition testimony which Plaintiff offers provides evidence suggesting that the job transfer resulted in inferior health benefits. As to the employer's purpose, Plaintiff offers these two statements:

>Q: And did you think you were transferred to the packing department because you had filed the union charge?
>
>A: I believe it was because of two things. First, I put the complaint in with the Department of Labor. And then it seems like my medicines were too expensive. So I think he wanted to take me out of there to packing so [sic] give me a different type of insurance.
>
>Q: When you were complaining about the medicines being too expensive, that was when you were on the union's insurance, correct?
>
>A: Let's see if I remember. Milan would just tell me, he would mess around

    with me by saying, Papi, you go to too many doctors.

(Frias Dep. 109:7-21.)

  Plaintiff offers no theory that explains how this evidence suggests a specific intent to interfere with his health benefits. In Plaintiff's Responsive Rule 56.1 Statement, Plaintiff states: "Frias maintains that a causal connection exists between his medical needs, which necessitated leave, prescriptions, and medical care, and the increased cost to his insurance, which in turn resulted in the decision to transfer his position." Plaintiff does not explain what evidence supports finding such a causal connection. Furthermore, this statement concedes that the costs were borne by the insurance plan, not by the employer.[2] Plaintiff has offered no evidence that his higher health care costs had any financial impact on his employer. Even if it is true that Plaintiff's health care costs (for medications and doctors) were high, it is not obvious that the costs to the insurer were passed on to Plaintiff's employer, nor that the employer would therefore have had an economic incentive to move Plaintiff from a union-affiliated health benefit plan to an employer-sponsored plan.[3] Plaintiff offers no evidence from which a reasonable finder of fact could infer such an incentive.

  Curiously, in support of his position, Plaintiff points to the Eleventh Circuit's decision in Gitlitz v. Compagnie Nationale Air Fr., 129 F.3d 554, 559 (11th Cir. 1997). Gitlitz, however,

---

[2] Essential to the concept of health insurance is the idea that the insurance shields the purchaser from the high health costs of certain individuals by pooling such costs. Again, it is not obvious that the employer would have accrued a financial benefit by getting Plaintiff out of one particular plan and into another, and Plaintiff has offered no evidence from which this might be inferred.

[3] Moreover, as Defendants note, it is difficult to understand what benefit the employer would have expected from transferring an employee with high health care costs into the employer-sponsored plan.

works against Plaintiff, since the Eleventh Circuit stated a test for making out a prima facie case that Plaintiff does not pass:

> In the context of a § 510 claim alleging unlawful discharge, a plaintiff may establish a prima facie case of discrimination by showing (1) that he is entitled to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances that give rise to an inference of discrimination…. To satisfy the last element the plaintiff does not have to prove discriminatory intent but must introduce evidence that suggests interference with ERISA rights was a motivating factor…. The plaintiff, however, cannot establish a prima facie case merely by showing that, as a result of the termination, he was deprived of the opportunity to accrue more benefits…. Moreover, measures designed to reduce costs in general that also result in an incidental reduction in benefit expenses do not suggest discriminatory intent…. Instead the employee must introduce evidence suggesting that the employer's decision was directed at ERISA rights in particular.

Id. (quoting Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1223-24 (11th Cir. 1993). Plaintiff's evidence does not show more than that, as a result of the transfer, Plaintiff was deprived of the opportunity to accrue more benefits. Plaintiff has introduced no evidence suggesting that the employer's decision was directed at ERISA rights in particular.

Plaintiff has failed to present evidence of an essential element of his prima facie case for violation of ERISA § 510: Plaintiff has no evidence from which a reasonable finder of fact could infer that the employer acted with the specific intent of interfering with Plaintiff's health benefits. As to Count IV, Plaintiff has failed to defeat Defendants' motion for summary judgment. As to Count IV, the motion for summary judgment will be granted.

    C.    <u>Plaintiff's claim for retaliation under the NJLAD</u>

Defendants move for summary judgment on Plaintiff's claim for retaliation under the NJLAD, arguing that Plaintiff cannot prove a causal connection between protected activity and any adverse employment action, given that there is a two-year delay between Plaintiff's taking

disability leave in 2006 and the transfer to the recycling department in 2008.  In opposition, Plaintiff responds that the retaliation case is premised on far more than the two events cited by Defendants.  Plaintiff also points to these events: 1) in 2006, when Plaintiff attempted to return to work after an accidental injury requiring surgery, Defendants refused to allow him to return to work; 2) the October 2007 transfer of Plaintiff from a union position to a non-union position in packaging; 3) the 2008 transfer of Plaintiff into the recycling department; 4) Plaintiff's termination in November, 2008.

The Third Circuit provides the following foundation for retaliation claims under the NJLAD:

> To advance a prima facie case of retaliation under . . . the NJLAD, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action.

Abramson v. William Paterson College, 260 F.3d 265, 286 (3d Cir. 2001).

Under Third Circuit law, "the 'adverse employment action' element of a retaliation plaintiff's prima facie case incorporates the same requirement that the retaliatory conduct rise to the level of a violation of 42 U.S.C. § 2000e-2(a)(1) or (2)."  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300-1301 (3d Cir. 1997).  Those statutory provisions state:

> (a) Employer practices. It shall be an unlawful employment practice for an employer--
>   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of

such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

While it is not clear that the first two events – the 2006 "refusal" to allow Plaintiff to return to work after surgery and the 2007 transfer into the packaging department – would fall within the scope of this definition of an adverse employment action, a reasonable finder of fact could certainly conclude that the termination and the 2008 transfer into recycling, which Plaintiff's deposition testimony characterized as a "dangerous" job, were both adverse employment actions. (Frias Dep. 123:10-17.) If Plaintiff's testimony were credited, a reasonable finder of fact could conclude that the years of 2007 and 2008 contained a series of protected actions on Plaintiff's part – he took leave after a stroke, had work absences to go to doctors, and filed a grievance through his union – and adverse employment actions in retaliation on Defendants' part.[4] Plaintiff has pointed to sufficient evidence to make out a prima facie case of retaliation.

In addition, the briefs make clear that the dispute over this claim is highly fact-intensive. A decision on the retaliation claim will require the resolution of many factual disputes – such as whether the October 2007 transfer into the packaging department was motivated by the company's purchase of a new meat-recovery machine which Plaintiff was not qualified to operate, as Defendants contend, or if it was an act of retaliation for his having lodged a complaint with the Department of Labor, as Plaintiff contends. A reasonable jury might or might not be persuaded by Plaintiff's testimony on this matter, and this is only one among several material

---

[4] Defendants' primary argument is that the temporal proximity of events two years apart is not "unusually suggestive" to establish causation. Plaintiff has countered this by showing a sequence of events from which a reasonable finder of fact could infer causation.

factual disputes that preclude the entry of judgment as a matter of law. As to Count II, the motion for summary judgment will be denied.

   D. <u>Plaintiff's other claims</u>

   Defendants have also moved for summary judgment on Count III, for violation of the National Labor Relations Act, Count IV, insofar as it states any claim for violation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), and Counts V through VII (breach of contract claims). Plaintiff has not opposed the motion for summary judgment on these claims, and this Court concludes that Plaintiff has abandoned these claims. As to Counts III, IV (insofar as it asserts any claim for violation of COBRA), V, VI, and VII, the motion for summary judgment will be granted. Because this Court will also grant the motion for summary judgment as to the Count IV claim under ERISA, only the first two claims of the Complaint, the claims under the NJLAD, survive this motion for summary judgment.

## CONCLUSION

   For the reasons stated above, Defendants' motion for summary judgment is granted in part and denied in part. As to Counts I and II, material factual disputes preclude a grant of summary judgment, and the motion for summary judgment is denied. As to the remaining Counts (III through VII), Defendants have shown that they are entitled to judgment as a matter of law. As to Counts III through VII, the motion for summary judgment is granted, and Judgment will be entered in Defendants' favor.

               s/ Stanley R. Chesler
               Stanley R. Chesler, U.S.D.J.

Dated: October 28, 2010